UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JOHN DOE,                                        :

                 Plaintiff,          :   Civil Action No:

                                       :

          -against-                 :   Jury Trial Demand

                                         :

VASSAR COLLEGE,                         :   <u>VERIFIED COMPLAINT</u>

                                         :

                   Defendant.             :

-------------------------------------------------------------------X

Plaintiff John Doe[1] ("Plaintiff"), by his attorneys Gage Spencer & Fleming LLP, as and for his Complaint against Vassar College, respectfully alleges as follows:

<b><u>THE NATURE OF THIS ACTION</u></b>

1.    This case arises out of the actions taken and procedures employed by Defendant Vassar College ("Defendant" or "Vassar") concerning allegations made against Plaintiff, a male senior student at Vassar as a result of false allegations of nonconsensual sexual activity with fellow Vassar sophomore student Jane Doe.

2.    These allegations purportedly referred to what was clearly consensual sexual activity on or about May 4, 2019 (the "Incident").

3.    On September 18, 2019, Defendant presided over a hearing at which exhibited numerous procedural irregularities and substantive shortcomings, and produced a determination based on unreliable, recanted testimony and gender-biased conclusions.

4.    Plaintiff has been greatly damaged by the actions of Defendant: his academic and athletic future stands to be severely damaged; funds spent on obtaining an education and degree at Defendant are threatened to be lost; and the real sacrifices made by Plaintiff's family so that

---

[1]      Plaintiff will soon file a Motion to proceed pseudonymously.

he could receive a quality education may be greatly impaired. Plaintiff therefore brings this action to obtain relief based on causes of action for, among other things, violations of Title IX of the Education Amendments of 1972, the Fourteenth Amendment right to due process and state law.

## THE PARTIES

5.   Plaintiff is a natural person, citizen of the United States, and resident of the State of Connecticut.  During the events described herein, Plaintiff was a student at Vassar College.

6.   Upon information and belief, Defendant Vassar College is a private, liberal arts college in the city of Poughkeepsie, New York, with an address of 124 Raymond Avenue, Poughkeepsie, New York 12604.

7.   Plaintiff and Defendant Vassar are sometimes hereinafter collectively referred to as the "Parties."

## JURISDICTION AND VENUE

8.   This Court has federal question and supplemental jurisdiction pursuant to 28 U.S.C. § 1331 and under 28 U.S.C. § 1367 because: (i) Plaintiff states claims arising under the Constitution and laws of the United States, including Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88; and (ii) the state law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the U.S. Constitution.

9.   This Court has personal jurisdiction over Defendant Vassar College on the grounds that it is conducting business within the State of New York in the Southern District of New York.

10.   Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because Vassar College is considered to reside in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

I.  The Incident

11.  On May 4, 2019, Plaintiff and Jane Doe were at a party off campus.

12.  At the party, Jane Doe approached Plaintiff.

13.  They had not met before.

14.  Jane Doe led Plaintiff to the dance floor.

15.  Jane Doe became sexually physical with Plaintiff, pushing her body into his.

16.  Jane Doe and Plaintiff kissed intimately on the dance floor.

17.  Jane Doe led Plaintiff out of the party and they left together.

18.  Jane Doe's actions and conduct supplied Plaintiff with consent for sexual contact.

19.  Twice, once before and then as she was leaving, a fellow student observing Plaintiff and Jane Doe asked Jane Doe if she was okay and whether she consented to what he concluded would be sexual activity with Plaintiff.  Jane Doe responded both times that she was fine and that she consented.

20.  The consent required by governing school policies relates to sexual contact, not to dorm room visitation.

21.  The policy states: "[c]onsent can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity."[2]

22.  Jane Doe and Plaintiff walked to Plaintiff's dormitory room.

23.  On the walk, Jane Doe admitted to Plaintiff having had a sexual history with at least three members of Vassar's varsity soccer team of which Plaintiff was the Captain.

24.  In Plaintiff's room, Jane Doe and Plaintiff engaged in mutual sexual touching.

---

[2]     *Affirmative     Consent*,     eeoa.vassar.edu,     https://eoaa.vassar.edu/title-ix/policy/affirmative-consent.html#targetText=Consent%20cannot%20be%20given%20when,force%2C%20or%20threat%20of%20harm.

25.   Upon sensing that Jane Doe was intoxicated, Plaintiff withdrew from the sexual activity in compliance with Defendant's governing internal policies.

26.   Plaintiff also withdrew from the sexual activity in compliance with his own moral code.

27.   Jane Doe and Plaintiff did not have intercourse.

28.   Plaintiff was still wearing his clothes as he left Jane Doe.

II.    The Hearing

29.   Jane Doe filed a complaint with Vassar claiming that Plaintiff engaged in Sexual Harassment and Sexual Misconduct/Non-Consensual Sexual Contact by touching her in a sexual fashion without her consent in violation of College Regulations.

30.   She claimed that she had withdrawn her consent while walking to Plaintiff's dorm room.

31.   Defendant administers extensive training on sexual assault and violence prevention which inculcates the idea that, to provide appropriate support to claimed victims and to encourage reporting of claims, victims are to be believed regardless of the facts.

32.   Defendant's emphasis on this program has fostered a culture which has led to the embrace of the school-wide sentiment of "believe the victim."

33.   This movement arguably originates from a 2014 incident where a soccer player like Plaintiff was found not responsible for sexual misconduct, a result which caused a significant backlash against the soccer team and charges of incompetence and negligence in calling for the firing of Vassar's President and Dean of the College.

34.   Now, it is predominantly directed, for cases of alleged sexual misconduct, to the female student body and has engendered a system which pressures the subordination of factual

truth to the need to "believe the victim," or what Defendant's Title IX office terms "survivors" of alleged sexual misconduct.

35.   Defendant's Title IX Coordinator conducted an investigation and a hearing was held on September 18, 2019.

36.   Plaintiff was the only male in the hearing.

37.   An "Adjudicator" presided over the hearing and issued a decision finding Plaintiff responsible on a preponderance of the evidence standard.

38.   The Adjudicator then determined that Plaintiff's sanction was to be banished from campus for the Fall 2019 semester and suspended from school and all school activities for that period of time.

39.   In making her decision, the Adjudicator made a determination that the consent expressly provided by Jane Doe to the fellow student at the party related not to sexual contact but merely to going to Plaintiff's dorm room, even though no such consent is required under school policies.

40.   The Adjudicator also credited Jane Doe's testimony that she withdrew that consent on the walk to the dorm room, yet did not address or comprehend the incongruity of the fact that, if that consent was merely to go to the dorm room as the Adjudicator found, Jane Doe nevertheless did not leave to go to her own room at that point.

41.   Finally, the Adjudicator gave "particular note" to the testimony of Jake Kaplan, a witness called by Jane Doe and the only witness to give live testimony at the hearing.

42.   The adjudicator found Jake Kaplan to be "credit worthy."

43.   In particular, the Adjudicator noted as worthy of credit the various conversations Jane Doe had had with Jake Kaplan around the time of the Incident.

44. The testimony of Jake Kaplan violated Defendant's policies and deprived Plaintiff of fundamental measures of due process.

45. First, Defendant's Title IX Adjudication Procedural Guide stipulates that witnesses be provided to the Title IX Coordinator at least two business days before a hearing.

46. Here, the Title IX Coordinator informed the parties that they needed to provide their witnesses by 3:00 p.m. on September 16, 2019.

47. Jane Doe did not inform the Title IX Coordinator that Jake Kaplan would be a witness for her until approximately 8:00 p.m. on September 16, 2019, which missed the deadline by five hours.

48. In the meantime, Plaintiff met with the Title IX Coordinator on September 16 and was told that Jane Doe had not requested any witnesses for the hearing which he would need to prepare to cross-examine.

49. Then, at 8:14 p.m. on September 17 (the night before the hearing), Defendant first informed Plaintiff that Jake Kaplan would testify for Jane Doe in violation of Defendant's procedural rules.

50. Jake Kaplan provided testimony at the hearing the next day on which the Adjudicator noted having given particular weight in making the credibility determination to credit Jane Doe's version of events and in issuing the punishment to Plaintiff.

51. In the ensuing days, Plaintiff received an unsolicited text message from Jake Kaplan who revealed that Jane Doe wanted a much lesser punishment, and questioned the reliability of his own testimony, stating "[t]his shouldn't have happened to you and I feel like it's my fault and I never had anything against you and I feel like I testified prematurely . . . I know you aren't a bad guy fuck I'm so sorry I'm so sorry."

52. As raised at the hearing, Jane Doe and Jake Kaplan had a previous sexual relationship.

53. As a volleyball player, Jake Kaplan had been distressed by Jane Doe's sexual liaisons with other members of the volleyball team.

54. The Adjudicator even credited Jane Doe's argument that there was no conflict between her and Jake Kaplan, ironically because of her prior sexual relationship with him, and that it actually bolstered the credibility of his testimony.

55. Later, though, in yet another writing to Plaintiff, Jake Kaplan notified Plaintiff to the contrary, indicating that he no longer had any confidence in his testimony, and that Jane Doe was a "manipulative" person who "knows how to get what she wants."

III.   The Appeal

56. On or about September 29, 2019, Plaintiff appealed the Adjudicator's decision in compliance with Defendant's internal requirements.

57. Plaintiff's appeal (i) raised the new evidence from Jake Kaplan disavowing his own testimony and implying that he had been manipulated by Jane Doe into giving it based precisely on conversations she had had with him which the Adjudicator had deemed especially creditworthy, (ii) contested the severity of the punishment given, and (iii) addressed the hearing's procedural errors.

58. After due consideration, the Dean of the College wrote Plaintiff and characterized the sanction imposed of suspension as possibly disproportionate relative to the alleged conduct.

59. Even so, the Dean of the College denied Plaintiff's appeal, effectively refusing to consider it, with the exception of the ground of procedural error which he agreed to send for

consideration to Defendant's College Regulations Appeal Committee (the "Committee"), which he chairs.

60. On October 14, 2019, the Committee, consisting of (i) the Dean of the College, (ii) the Associate Professor and Chair of Film, (iii) the Lab Coordinator for Psychology, and (iv) the Director of Residential Education, affirmed the Adjudicator's decision and punishment.

61. The Committee found the late notice of Jake Kaplan's participation as a live witness caused no impact on the outcome of the hearing because Plaintiff had the opportunity to ask questions during the hearing and "the right to take a break during the hearing to prepare . . . ."

62. Furthermore, the Committee found Plaintiff had sufficient notice to prepare to question Jake Kaplan since he was able to review an investigative report as early as August 2019.

63. The Committee did not address that Plaintiff did not know to prepare questions for a live witness because he did not know Jake Kaplan would be presented for questioning as a live witness until 8:14 p.m. the night before the hearing.

64. Finally, the Committee addressed Defendant's policy that witnesses be identified "at least two days before the date of the hearing" by crediting Jane Doe's claim that she verbally requested Jake Kaplan's presence at the hearing to the Title IX office in the week prior to the hearing.

65. The Committee did not refer to any witness in the Title IX office to corroborate that Jane Doe made that verbal request.

66. When questioned by Plaintiff's father after the Committee's decision, the Title IX Coordinator stated she had "no recollection" of Jane Doe having made that verbal request.

67. A September 13, 2019, email from the Title IX Coordinator to Plaintiff about his right to be notified of in-person witnesses also made no mention that Jane Doe had made a prior verbal request.

68. Furthermore, at or around 6:00 p.m. on September 16, 2019, three hours after the 3:00 p.m. deadline for providing the names of live witnesses, Jake Kaplan told Plaintiff's hearing representative (a fellow student) that his participation in the process was over and that he would not be testifying live.

69. On information and belief, the manipulation Jake Kaplan referenced with respect to Jane Doe related to her late efforts to cause him to testify at the hearing after 6:00 p.m. on September 16, 2019.

70. Lastly, if Jane Doe notified the Title IX office verbally the week of September 9-13, 2019, there would have been no need for her to have provided written notice of Jake Kaplan's status as a live witness on September 16, 2019, five hours past the deadline for having done so.

IV.    Defendant's Process Exhibited Gender Bias

71. The wrongful outcome was also related to gender bias.

72. Defendant's former Title IX Coordinator has stated that "[m]ost of the reporting students are women and most of the responding students, or the accused students, are men."

73. Following an incident in 2014, where a soccer player like Plaintiff was found not responsible for sexual misconduct, a movement sprang up creating a significant backlash against the soccer team and charges of incompetence and negligence in calling for the firing of Vassar's President and Dean of the College.

74. In its aftermath, Defendant hired a new Sexual Assault and Violence Prevention (SAVP) Coordinator to direct a new approach in response to the clamor.

75.   Through the SAVP, Defendant administers extensive training on sexual assault and violence prevention, attended by Plaintiff, which inculcates the idea that, to provide appropriate support to claimed victims and to encourage reporting of claims, victims are to be believed regardless of the facts.

76.   Defendant has publicly embraced a motto of "believe the victim."

77.   This movement is now predominantly directed, in the area of allegations of sexual misconduct, to the female student body and has engendered a system-wide gender bias in favor of what Defendant's Title IX office characterizes as "survivors" of alleged sexual misconduct.

78.   In this climate, factual truth has taken a back seat to the need to believe "survivors" who are predominantly female.  This culture, which has leaked into the school's adjudication of allegations of sexual misconduct, reveals a predisposition or prejudice in favor of women over men.

V.   <u>Plaintiff's Future Has Been Severely Damaged by Defendant's Actions</u>

79.   As a result of Defendant's actions, Plaintiff's academic career is suspended and his athletic career possibly ruined.

80.   Recruited to Vassar to play soccer, Plaintiff is in his senior year, is Captain of the School's Soccer Team, and has reasonable hopes of pursuing a professional soccer career overseas.

81.   This is Plaintiff's last year of NCAA eligibility.

82.   The punishment of suspension for a semester will eliminate his ability to collect enough credits to graduate on time with his class.

83.   Without any further eligibility to play college soccer, the suspension will present Plaintiff with the Hobson's choice of foregoing a professional soccer career to get his college

degree next Fall, or forego his opportunity to get a college degree for the foreseeable future to pursue his professional soccer ambitions.

84.  Further, with respect to his education, the current semester is the last that Plaintiff is allowed to declare or change his major.

85.  If suspended, Plaintiff will lose this option.

86.  Currently, he planned to declare a "correlate" in writing this semester and, for this purpose, was taking an English seminar class that would count towards this correlate.

87.  Additionally, this coming Friday and Saturday, October 18-19, 2019, is Senior Day at Vassar at which the Senior soccer players are recognized for their contributions to the school and its soccer program over their four years.

88.  It is also the only weekend in the school year where the school's soccer team plays a "doubleheader" of two games.

89.  If the suspension is not enjoined, Plaintiff, having been recognized by his teammates for his hard work and leadership by being elected Captain of the team, Plaintiff will lose the unique opportunity for he and his family to experience the recognition and emotional and psychological reward for all the work he has put in.

90.  The weekend event, culminating in the Senior ceremony, is a capstone for families who have struggled to put their children through the rigors of higher education and NCAA athletics.  Prior to the start of the second game of the weekend, the seniors walk out with their parents and are recognized for their services to the college and the team.  They are given a commemorative-framed photo and are recognized by the coaching staff as well as the stadium announcer.  This one-time event will never be available again and lost forever should Defendant's decision to impose a sanction of suspension not be enjoined.

91. As respects his education, the current semester is the last that Plaintiff is allowed to declare or change his major, an option he will lose if suspended.

92. Currently, Plaintiff has planned to declare a "correlate" in writing this semester and, for this purpose, was taking an English seminar class that would count towards this correlate. This too will be lost if the suspension is not enjoined.

93. Without immediate equitable relief, the harm Plaintiff will suffer from the suspension will be irreparable and irreversible, and would not be compensable either by money damages nor repaired by permanent injunctive relief that might be granted after a decision on the merits in his favor.

## AS AND FOR THE FIRST CAUSE OF ACTION

### Violation of Title IX of the Education Amendments of 1972

94. Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

95. Title IX of the Education Amendments of 1972 provides, in relevant part, that:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

96. Title IX of the Education Amendments of 1972 applies to an entire school or institution if any part of that school receives federal funds; hence, athletic programs are subject to Title IX of the Education Amendments of 1972, even though there is very little direct federal funding of school sports.

97. Upon information and belief, Defendant receives federal funding for research and development.

98.    Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student... complaints alleging any action which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice) (emphasis added). Such prohibited actions include all forms of sexual harassment, including sexual intercourse, sexual assault, and rape.[3]

99.    The procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of the complainant," but must also "accord[] due process to both parties involved . . . ."[4]

100.    The "prompt and equitable" procedures that a school must implement to "accord due process to both parties involved" must include, at a minimum:

- "Notice . . . of the procedure, including where complaints may be filed;"

- "Application of the procedure to complaints alleging [sexual] harassment . . . ;"

- "Adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence";

- "Designated and reasonably prompt timeframes for the major stages of the complaint process;" and

- "Notice to the parties of the outcome of the complaint..."[5]

101.    Based on the foregoing, Defendant has deprived Plaintiff, on the basis of his sex, of his rights to due process and equal protection through the improper administration of and/or the existence, in its current state, of Vassar's guidelines and regulations.

---

[3] *See generally* U.S. Dep't of Educ., Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties -- Title IX* (2001) at 19-20, 21 & nn.98-101; also *see* U.S Dep't of Educ., Office for Civil Rights*, Q&A On Campus Sexual Misconduct*, at 3, 2017).
[4] *Revised Sexual Harassment Guidance*, id. at 22 (emphasis added); *Q & A on Campus Sexual Misconduct*, id.
[5] *Revised Sexual Harassment Guidance, id.* at 20.

102.    Based on the foregoing, Defendant conducted its investigation of the Incident and subsequent Hearing, in a manner that did not afford equal treatment to him as a male in violation of Defendant's own policies and standards.

103.    Furthermore, the Adjudicator at the hearing, and the Committee on the appeal, demonstrated a gender bias in favor of Jane Doe, credited each of her statements, dismissed all corroborating evidence of her consent to sexual activity, ignored subsequently discovered contradictory evidence, stretched common sense to arrive at a foreordained conclusion on the basis of gender, and, in the process, gave no credit at all to Plaintiff's exemplary exhibition of care to comply to the letter with the School's rules governing conduct by extricating himself from a sexual encounter at Jane Doe's first exhibition of "the degree of intoxication"[6] that may indicate the lack of capacity for consent.

104.    By violating its own procedures and standards, Defendant – through the decisions of the Adjudicator and the Committee – clearly demonstrated its favorable treatment of Jane Doe on the basis of her gender.

105.    Defendant's implementation of its rules and procedures in such a gender-biased manner denies accused male students fundamental due process and subjects them to a process which presumes their guilt.  Such a one-sided process deprived Plaintiff, as a male student, of educational opportunities at Vassar on the basis of his sex.

106.    In finding Plaintiff culpable of sexual misconduct, Defendant both afforded preferential treatment to Jane Doe's evidence and extended to her wider latitude on its governing policies and procedures based on her female gender and engaged in sex discrimination against Plaintiff in violation of Defendant's policies.

---

[6] *Affirmative Consent*, eeoa.vassar.edu, id.

107.   Defendant demonstrated that it had no intention of following its own policies and procedures for Plaintiff as the male accused of sexual misconduct when it found Plaintiff responsible for sexual misconduct in the face of contradictory evidence which corroborated Jane Doe's consent, all material and relevant aspects of her past sexual conduct, and her manipulation of evidence and Defendant's governing policies.

108.   Defendant's actions have demonstrated its gender bias against Plaintiff as a male accused of sexual assault.

109.   Defendant also imposed on Plaintiff the harshest possible sanction of suspension during Plaintiff's senior year, which effectively amounts to an expulsion, for the specific charges of sexual misconduct, without any consideration of his clean disciplinary record at Defendant, or his demonstrated abilities as a campus leader and Captain of a varsity team.

110.   Based on the foregoing, Defendant's application of its guidelines and regulations is set up to and does disproportionately affect the male student population of the Vassar community as evidenced by the higher incidence of female complainants of sexual misconduct against male complainants of sexual misconduct.

111.   Based on the foregoing, male respondents in sexual misconduct cases at Vassar are discriminated against solely on the basis of sex.  They are invariably found guilty, regardless of the evidence, or lack thereof.

112.   As a result of the foregoing, Plaintiff prays for equitable relief to prevent his irreparable harm and for legal damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE SECOND CAUSE OF ACTION
## <u>Breach of Contract</u>

113.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

114.    Plaintiff entered into an implied-in-fact contract with Defendant upon his enrollment.

115.    An implied-in-fact contract is an agreement founded upon a meeting of the minds which is inferred from conduct of the parties showing their tacit understanding.

116.    Plaintiff rendered his tuition payments to Defendant and, in return, relied upon Defendant's policies and procedures, including, without limitation, those governing the investigation, adjudication, and appeal of cases regarding allegations of sexual misconduct, to be faithfully followed.

117.    Based on the aforementioned facts and circumstances, Defendant breached express and/or implied agreement(s) with Plaintiff.

118.    In this case, Plaintiff established that he did not engage in any non-consensual sexual activity.

119.    Defendant's formal definition of consent was satisfied by Jane Doe's mutual participation in sexual activity as evidenced by her touching of Plaintiff's genitalia as well as her express consent to another student at the party.

120.    Furthermore, in perfect compliance with Defendant's rules, Plaintiff withdrew from sexual contact with Jane Doe at the first sense that she might be intoxicated.

121.    Despite this compliance with Defendant's rules, the Adjudicator found that Plaintiff had not obtained Jane Doe's consent and had engaged in nonconsensual sexual activity.

122.     The Adjudicator's finding and the Committee's affirmance of that finding was predicated on procedural irregularities and errors which included communicating to Plaintiff that Jane Doe had proposed no live witnesses; to then permitting Jane Doe to provide notice of a live witness past the procedural deadline; to then not notifying Plaintiff until 8:14 p.m. the night before the hearing; to crediting Jane Doe's self-contradicted and implausible explanation of what she meant when she expressly consented to sexual activity; to crediting her uncorroborated (by anyone, including the Title IX Coordinator) explanation that she provided verbal notice of a live witness; to crediting her argument that her prior sexual relationship with her live witness was the thing that made him more, not less, believable; to ignoring the recanted testimony of the live witness on which the Adjudicator expressed as particularly important to her decision; to denying Plaintiff the opportunity to ask highly relevant and material questions to Jane Doe about her sexual history; to denying Plaintiff the right to directly cross-examine Jane Doe or the live witness in a case which hinged entirely on credibility in a he-said, she-said scenario.

123.     These failures, and Defendant's failures to hew to its own procedures and rules, were in violation of Defendant's obligation to remain neutral and impartial, and examine related information and evidence.

124.     As a direct and foreseeable consequence of these breaches, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

125.     Plaintiff is entitled to recover damages for Defendant's breach of the express and/or implied contractual obligations described above.

126.     As a direct and proximate result of the above conduct, actions and inactions, Plaintiff has sustained irreparable harm, including, without limitation, emotional distress, loss of

educational and athletic opportunities, economic injuries and other direct and consequential damages.

127.   As a result of the foregoing, Plaintiff prays for equitable relief to prevent his irreparable harm and for legal damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE THIRD CAUSE OF ACTION
### Breach of Covenant of Good Faith and Fair Dealing

128.   Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

129.   Based on the aforementioned facts and circumstances, Defendant breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with Plaintiff by finding Plaintiff culpable of sexual misconduct, notwithstanding the lack of evidence in support of Jane Doe's claim of sexual misconduct.

130.   As a direct and foreseeable consequence of these breaches, Plaintiff has sustained irreparable harm, including, without limitation, emotional distress, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

131.   As a result of the foregoing, Plaintiff prays for equitable relief to prevent his irreparable harm and for legal damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE FOURTH CAUSE OF ACTION
### Estoppel and Reliance

132.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

133.    Defendant's various policies constitute representations and promises that Defendant should have reasonably expected to induce action or forbearance by Plaintiff.

134.    Defendant expected or should have expected Plaintiff to accept its offer of admission, incur tuition and fees expenses, and choose not to attend other colleges based on its express and implied promises that Defendant would not tolerate, and Plaintiff would not suffer, harassment by fellow students and would not deny Plaintiff his procedural and contractual rights should he be accused of a violation of Defendant's policies.

135.    Plaintiff relied to his detriment on these express and implied promises and representations made by Defendant.

136.    Based on the foregoing, Defendant is liable to Plaintiff based on Estoppel.

137.    As a direct and proximate result of the above conduct, Plaintiff has sustained irreparable harm, including, without limitation, emotional distress, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

138.    As a result of the foregoing, Plaintiff prays for equitable relief to prevent his irreparable harm and for legal damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE FIFTH CAUSE OF ACTION
### Negligence

139.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

140.    Defendant owed duties of care to Plaintiff.

141.     Such duties included, without limitation, a duty of reasonable care in the investigation and determination of the allegations of sexual misconduct against him.

142.     Defendant was negligent in finding Plaintiff culpable of sexual misconduct, in light of the record of evidence addressed above including, without limitation, the corroborating evidence of consent, the restraint demonstrated by Plaintiff, and the evidence of procedural irregularities permitted by Defendant.

143.     Defendant was negligent in failing to comply with its own procedures and standards, and to employ neutral and impartial personnel to adjudicate highly serious allegations of sexual misconduct being alleged against Plaintiff and leading to his suspension.

144.     Defendant breached its duties owed to Plaintiff.

145.     As a direct and proximate result of the above conduct, Plaintiff has sustained irreparable harm, including, without limitation, emotional distress, loss of educational opportunities, economic injuries and other direct and consequential damages.

146.     As a result of the foregoing, Plaintiff prays for equitable relief to prevent his irreparable harm and for legal damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE SIXTH CAUSE OF ACTION

### Declaratory Judgment

147.     Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

148.     Defendant has committed numerous violations of the Parties' contracts and of federal and state law.

149.   Plaintiff's education and future career has been severely damaged. Without appropriate redress, the unfair outcome of the hearing and appeal will continue to cause irreversible damages to Plaintiff's educational and/or athletic careers, as well as future employment prospects.

150.   As a result of the foregoing, there exists a justiciable controversy between the Parties with respect to the outcome, permanency, and future handling of Plaintiff's formal student record at Defendant.

151.   By reason of the foregoing, Plaintiff requests, pursuant to 28 U.S.C. § 2201, a declaration that: (i) the outcome and findings made by Defendant at Plaintiff's hearing be reversed; (ii) Plaintiff's reputation be restored; (iii) Plaintiff's disciplinary record be expunged; (iv) the record of Plaintiff's expulsion from Defendant be removed from his education file; (v) any record of Plaintiff's hearing be permanently destroyed; and (vi) Defendant's rules, regulations and guidelines are unconstitutional as applied.

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiff demands judgment against Defendant as follows:

(i)   on the first cause of action for violation of Title IX of the Education Amendments of 1972, preliminary and permanent equitable relief in the form of reversal of Plaintiff's suspension, as well as a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(ii)   on the second cause of action for breach of contract, preliminary and permanent equitable relief in the form of reversal of Plaintiff's suspension, as well as a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of

educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iii)     on the third cause of action for breach of covenant of good faith and fair dealing, preliminary and permanent equitable relief in the form of reversal of Plaintiff's suspension, as well as a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iv)     on the fourth cause of action for estoppel and reliance, preliminary and permanent equitable relief in the form of reversal of Plaintiff's suspension, as well as a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(v)     on the fifth cause of action for negligence, preliminary and permanent equitable relief in the form of reversal of Plaintiff's suspension, as well as a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(vi)     on the sixth cause of action for a declaratory judgment pursuant to 28 U.S.C. § 2201, a judicial declaration that: (i) the outcome and findings made by Defendant at Plaintiff's Hearing be reversed; (ii) Plaintiff's reputation be restored; (iii) Plaintiff's disciplinary record be expunged; (iv) the record of Plaintiff's expulsion from Defendant be removed from his education file; (v) any record of Plaintiff's Hearing be permanently destroyed; and (vi) Defendant's rules, regulations and guidelines are unconstitutional as applied; and

(vii)     awarding Plaintiff such other and further relief as the Court deems just, equitable and proper.

## <u>JURY DEMAND</u>

Plaintiff herein demands a trial by jury of all triable issues in the present matter.

Dated:   New York, New York
         October 17, 2019

GAGE SPENCER & FLEMING LLP

By:   */s/ William B. Fleming*
      William B. Fleming
      410 Park Avenue, Suite 810
      New York, New York 10022
      Tel. (212) 768-4900
      Wfleming@gagespencer.com
      *Attorneys for Plaintiff John Doe*

## **VERIFICATION**

I, John Doe, declare under penalty of perjury that the foregoing Verified Complaint is true to the best of my knowledge and ability.

Dated: New York, New York
    October 17, 2019

_____
_John Doe_
John Doe

Sworn to before me this
17th Day of October 2019

_____
NOTARY PUBLIC

WILLIAM B. FLEMING
Notary Public, State of New York
No. 02FL60002362
Qualified in New York County
Commission Expires 2/9/2005
5/13/22